IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | Case No. 6:18-cr-10099-EFM |
| ) | |
| BRADLEY A. PISTOTNIK and ) | |
| DAVID DORSETT, ) | |
| ) | |
| *Defendants*. ) | |

**MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INFORMATION BY
XCENTRIC VENTURES, LLC AND CHANDLER AUTOMATED SYSTEMS, LLC**

Defendant David Dorsett (Dorsett) moves this Court for an order compelling non-parties Xcentric Ventures, LLC (Xcentric) and Chandler Automated Systems, LLC (Chandler) to produce documents and other information in this litigation. In support of this request, Dorsett states:

1. Defendants Bradley A. Pistotnik (Pistotnik) and Dorsett have been indicted in part for allegedly sending emails to email addresses associated with the website www.theripoffreport.com, allegedly to cause that website to remove information about Pistotnik.

2. Xcentric is the owner of the website www.theripoffreport.com and receives email support from Chandler, an IT company. Xcentric claims it has incurred damages of more than $70,000 because of the emails. Chandler charged Xcentric those amounts for equipment and labor, ostensibly to repair the damage the emails had caused.

3. The government has alleged that, by sending those emails, Pistotnik and Dorsett violated 18 U.S.C. § 1030(a)(5)(A), which requires at least $5,000.00 in damage to the recipient's computer. The government further alleges that the emails themselves contained a

threat that the same emails would be sent to advertisers of www.theripoffreport.com, and that those emails would cause damage to those advertisers' computers.

4. On November 15, 2018, this Court entered a Protective Order governing the production of documents in this litigation. Doc. 57. Virtually all the documents that have been produced in this litigation, including those at issue in this motion, have been produced pursuant to that Protective Order.

5. For several months, Dorsett and Pistotnik have been attempting to obtain documents and information from Xcentric and Chandler related to its alleged damages. This has resulted in a growing list of motions, orders and status conferences.

6. At the last status conference, undersigned counsel outlined remaining issues with the discovery from Xcentric and Chandler. This Court ordered Dorsett to file any motion to compel related to Xcentric and Chandler by August 16, 2019.

## DISCUSSION

By now, this Court is well apprised of the issues in this case. The government's claims against Pistotnik and Dorsett are that they (1) caused more than $5,000 in damage to Xcentric's computers through sending them emails, and (2) the emails contained an alleged threat to send similar emails to Xcentric's advertisers if a posting about Pistotnik was not removed (by statute, those emails also would have to have the capacity to cause damage to the computers of those advertisers). Therefore, the government's claims depend on whether, and to what extent, these emails cause damage to the computer that receives them.

Dorsett's position is these emails do not have the capacity to damage any modern-day computer or email system and Xcentric's claimed damages are either (1) the result of Xcentric manufacturing damages to persuade law enforcement to bring charges, or (2) Chandler taking

advantage of Xcentric and the situation to upgrade existing systems it uses for Xcentric and other Chandler clients. Either way, the emails are not the devastating device they are claimed to be.

To be sure, the emails Xcentric received are not a virus, worm, trojan, bot, or other malicious code, and did have any attachments. They do not have the capacity to infect any computer, encrypt information, or hold information hostage. They do not delete information or do anything to the receiving computer, beyond what happens when any typical computer receives any typical email message. They are emails of the most common variety, just like the countless emails many of us receive for work and personal business.

The government indicted Pistotnik and Dorsett based in part on Xcentric's representation to the FBI that the emails caused more than $70,000 in damage to Xcentric's computers. Through the supplemental disclosure of documents that Xcentric fought for months to keep secret, it has become clear that Xcentric's position is not genuine. At the time it was receiving these emails, Xcentric's internal IT person wrote that he could have dealt with the email-situation with "a click of a button". But he didn't because, again in his own words, Xcentric wanted to "have something to show authorities" and show the sender "who's boss". In other words, Xcentric chose to let the emails continue because they wanted to build a criminal prosecution against whomever was sending them; based what they chose to share with law enforcement, they achieved their goal.

Although Xcentric and its IT provider, Chandler, have now provided many of the documents they should have provided months ago (and frankly, should have provided to law enforcement before this case was considered for charges), they have not complied with this Court's orders and the rules governing what information can be withheld through various privileges. Through this motion, Dorsett offers the Court what may be his last chance to obtain

the information he has the right to receive in order to defend himself against a federal prosecution built on what we now know were false or misleading representations by Xcentric to federal law enforcement.

Dorsett prays that this Court order Xcentric to produce the following documents and information:

1. Information redacted with no stated basis for the redaction.
2. Information redacted on a claim of attorney-client privilege when no precise reason for the claim has been provided.
3. Information redacted on a claim of attorney-client privilege when that privilege has been waived.
4. Information redacted on a claim of attorney work product when Xcentric has failed to show that privilege applies.
5. Information redacted on a claim of First Amendment protection.
6. The sender information for emails for which the body of the email was produced.
7. The following information regarding the computers that allegedly received the emails:
    a) The year, make and model of the computer
    b) The role of the computer at the company (i.e.: workstation, data server, email server, etc.)
    c) Specifications about the computer, including hard drive capacity, amount of data allocated, operating system and date of installation, user accounts, and network configuration
    d) List of installed applications, including any and all email applications that received the emails

Dorsett further prays that this Court order Chandler to produce the documents and information in Category 7 for its systems.

### 1. Xcentric Should Be Ordered to Produce Information Redacted with no Basis.

Of the 3,925 pages Xcentric has produced, approximately 130 pages contain redactions with no stated basis for them. Xcentric redacted information on the following documents—and sometimes, as in the case of XCV Pistotnik000369-000373 and 000401-000408, redacted entire documents—with no explanation whatsoever: XCV Pistotnik000213, 000219, 000223, 000234, 000241, 000246, 000252, 000318-000356, 000359-000374, 000401-000434, 000437, 000444,

000448, 000452-000453, 000553, 000686, 000688, 000729, 000732, 000769, 000779, 000785-000786, 000793, 001646, 001650, 001799, 001804, 001862-001863, 001894-001897, 001904, 001906-001908, 001941-001942, 002003-002004, and 002660.

The party withholding or redacting a document based on a privilege bears the burden to prove that the privilege applies to the document. *Boyer v. Bd. of Cty. Comm'rs*, 162 F.R.D. 687, 688 (D. Kan. 1995). Because Xcentric has offered no explanation why these documents were held back, Xcentric should have to produce unredacted copies of them.

**2. Xcentric Should be Ordered to Produce Information Redacted on a Claim of Attorney-Client Privilege Where It Has not Met its Burden of Proof.**

Xcentric withheld information on at least 923 pages on grounds of attorney-client privilege. The elements for the attorney-client privilege are:

(1) Where legal advice of any kind is sought,
(2) from a professional legal advisor in his capacity as such,
(3) the communications relating to that purpose,
(4) made in confidence,
(5) by the client,
(6) are at his instance permanently protected,
(7) from disclosure by himself or by the legal advisor,
(8) except the protection be waived.

*Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006), *clarified on denial of reconsideration*, No. 03-2200-JWL-DJW, 2006 WL 3694862 (D. Kan. Dec. 13, 2006). Xcentric bears the burden of proof to show that the privilege applies. *Boyer*, 162 F.R.D. at 688. Xcentric only meets that burden "by an evidentiary showing based on competent evidence," and the burden "cannot be 'discharged by mere conclusory or *ipse dixit* assertions.'" *Nat'l Union Fire Ins. Co., P.A. v. Midland Bancor*, 159 F.R.D. 562, 567 (D. Kan. 1994) (citation omitted). Xcentric must make a "clear showing" that a privilege applies. *Ali v. Douglas Cable Communs.*, 890 F. Supp. 993, 994 (D. Kan. 1995); *Peat, Marwick, Mitchell*

*& Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984). This means that Xcentric "must give a detailed description of the documents to be protected 'with precise reasons given for the particular objection to discovery.'" *Nat'l Union Fire Ins. Co.*, 159 F.R.D. at 567. Xcentric must also "supply the court with sufficient information to enable the court to determine that each element of the privilege is satisfied," because "[a] failure of proof as to any element of the privilege causes the claim of privilege to fail." *Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D. Kan. 1994).

Although Xcentric redacted numerous documents on a claim of attorney-client privilege, many of the redactions contain no "precise reasons" for its objections. *Nat'l Union Fire Ins. Co.*, 159 F.R.D. at 567. Nor do they contain any "evidentiary showing[s] based on competent evidence"—the objections are all "mere conclusory or *ipse dixit* assertions," which courts in the District of Kansas consistently reject. *Id.* The problematic objections are as follows:

- XCV Pistotnik00257-000265: Xcentric's explanation for these objections in its privilege log simply reads, "Notes of conversation between attorney-client."

- XCV Pistotnik000380-000392: The privilege log for these almost completely redacted documents reads, "Emails between attorney-client."

- XCV Pistotnik000435-000436: The log simply states, "Notes of meeting between attorney-client."

- XCV Pistotnik000504: The privilege log only states, "Emails between attorney-client."

- From XCV Pistotnik000707 to 001242, Xcentric withheld more than 300 documents under the explanation, "Email among counsel and client re legal analysis of Pistonik's production of confidential documents NOT under seal and attachments re same." Xcentric offers no credible explanation for its assertion of privilege over the hundreds of documents attached to the emails.

- XCV Pistotnik001834-001836, 001848-001850, 001856-001861, 001884-001893, 001898-001903, 001913-001918, 001925-001929, and 001999-002003: Xcentric's log just says, for these completely redacted documents,

- "Attorney/client communications and attorney work product related to production response to subpoena."

- XCV Pistotnik001944-001997: the log simply says, "Attorney invoices with notes of client communications."

- XCV Pistotnik002064: the log only says, "Attorney/Client communication - legal advice."

- XCV Pistotnik002687-002688: the log just describes the documents as "Emails between attorneys Adam Kunz and Maria Speth re: Pistotnik investigation."

- XCV Pistotnik003020-003288, 003290-003317, 003319-003367, 003386-003403, 003531-003533, 003538-003543, 003555-003558, 003563-003575, 003610-003614, 003623-003629, 003633-003650, 003663-003717, and 003789-003880: the log just says, for these missing documents, "emails between client and legal department/attorneys re case matters/strategy."

- XCV Pistotnik003884-003904: the log states, "Emails between client and legal department/attorneys re issues with the Victim Notification System (VNS) and related discussions."

No evidentiary showing supports any of these conclusory assertions of privilege, so Dorsett has no way to determine whether the privilege applies, and in particular, whether these communications relate to legal advice or were made in confidence. *See Williams*, 2006 WL 266599, at *2. Xcentric had a well-recognized burden of proof in responding to Dorsett's requests, and it did not meet that burden. Xcentric should have to produce unredacted copies of the above documents.

### 3. Xcentric Should be Ordered to Produce Information Redacted on a Claim of Attorney-Client Privilege where It Has Waived that Privilege

Although many of Xcentric's redactions based on claimed attorney-client privilege do not have a sufficient basis under the law, for others, Xcentric waived its privilege. The attorney-client privilege "is lost if the client discloses the substance of an otherwise privileged communication to a third party" because "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *In re Qwest Communs. Int'l*, 450

F.3d 1179, 1185 (10th Cir. 2006) (citations and quotation marks omitted). Additionally, "[a] party waives the attorney-client privilege if it discloses the substance of an otherwise-privileged communication." *Sprint Communs. Co., L.P. v. Comcast Cable Communs., LLC*, No. 11-2684-JWL, 2017 U.S. Dist. LEXIS 26271, at *10 (D. Kan. Feb. 23, 2017).

Federal Rule of Evidence 502(a) supplies the test for this so-called subject-matter waiver of privilege:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

As courts in the District of Kansas have acknowledged, "much remains unsettled" around Rule 502(a) because the Tenth Circuit has yet to provide a definitive reading of the Rule. *United States v. Broombaugh*, No. 14-40005-10-DDC, 2017 U.S. Dist. LEXIS 98305, at *11 (D. Kan. June 26, 2017). Accordingly, there is no "bright line test" for waiver under Rule 502(a). *Leftwich v. City of Pittsburg*, No. 16-2112-JWL, 2017 U.S. Dist. LEXIS 99009, at *3 (D. Kan. June 27, 2017). But the focus is on the "ultimate question of fairness" to the party requesting allegedly privileged materials. *Sprint Communs. Co. L.P. v. Comcast Cable Communs. LLC*, No. 11-2684-JWL, 2014 U.S. Dist. LEXIS 99257, at *18 (D. Kan. July 22, 2014).

In this case, Xcentric has waived any privilege claim as to the following documents:

- XCV Pistotnik000165: Xcentric disclosed the subject of an email, "Advertiser asking to be removed," but redacted part of the subject line and the body of the email.

- XCV Pistotnik000232, 000238, and 000244: Xcentric disclosed an entire email exchange with its attorneys but redacted a single email in that chain; the entirety of the email chain ought in fairness be considered together.

- XCV Pistotnik002681-002684: Xcentric disclosed an email "[r]eport" from October 14, 2015, sent on October 19 to the FBI from adam@ripoffreport.com, but redacted emails from October 15 with subjects like "draft report of events." These emails, which appear to concern the same subject matter, ought in fairness be considered together.

Xcentric should have to produce unredacted copies of the above documents.

    **4. Xcentric Should be Ordered to Produce Information Redacted on a Claim of Attorney Work Product where It Has not Met its Burden of Proof.**

Xcentric withheld information from at least 227 pages of discovery on claims of attorney work product. As with the attorney-client privilege, the party asserting work-product objections bears the burden to show the work-product doctrine applies. *Boyer*, 162 F.R.D. at 688. The objecting party only meets its burden "by an evidentiary showing based on competent evidence," and the burden "cannot be 'discharged by mere conclusory or *ipse dixit* assertions.'" *Nat'l Union Fire Ins. Co.*, 159 F.R.D. at 567.

Here, Xcentric supplied no evidentiary basis for the following work-product objections:

- XCV Pistotnik001433: The log only says, "Communication between Xcentric attorneys; legal analysis."

- XCV Pistotnik001254 and 001442: The privilege log says, "Internal legal department notes/analysis."

- XCV Pistotnik001621: The log only says, "Communication between Xcentric attorneys; legal analysis."

- XCV Pistotnik001818-001821: The log simply says, "Attorney correspondence with legal analysis."

- XCV Pistotnik001834-001836, 001848-001850, 001856-001861, and 001884-001903: Xcentric's privilege log just says, for these completely redacted documents, "Attorney/client communications and attorney work product related to production response to subpoena."

- XCV Pistotnik002027-002028, 002033-002034, 002044, and 002046: The log only says, in conclusory fashion, "Legal impressions/Attorney Work Product."

- XCV Pistotnik002687-002688: The privilege log describes the documents as "Emails between attorneys Adam Kunz and Maria Speth re: Pistotnik investigation." Yet the log gives no other indication that work-product protections apply.

- XCV Pistotnik003020-003288, 003290-003317, 003319-003367, 003386-003403, 003531-003533, 003538-003543, 003555-003558, 003563-003575, 003610-003614, 003623-003629, 003633-003650, 003663-003717, and 003789-003880: The log simply says, for these removed documents, "emails between client and legal department/attorneys re case matters/strategy."

- XCV Pistotnik003884-003904: Xcentric's privilege log only says, "Emails between client and legal department/attorneys re issues with the Victim Notification System (VNS) and related discussions."

No evidentiary showing supports any of these conclusory assertions of work-product protections. This Court should compel Xcentric to produce unredacted copies of the above documents.

**5. Xcentric Should be Ordered to Produce Documents Redacted on Claims of First-Amendment Protection.**

Xcentric withheld information from at least 136 pages of the discovery on claims it is protected by the First Amendment. Indeed, the First Amendment does apply to discovery orders. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 U.S. Dist. LEXIS 19475, at *13 (D. Kan. Mar. 16, 2007); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987). In particular, "the Supreme Court has recognized a privilege, grounded in the First Amendment right of association, not to disclose certain associational information when disclosure may impede future collective expression." *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 479 (10th Cir. 2011). But the party claiming the privilege "bears the burden to make a *prima facie* showing of the privilege's applicability." *Id.* at 488.

The Tenth Circuit has not specified what proof is required to make such a *prima facie* showing, but at a minimum, the party claiming the privilege probably must offer more than a single, unsworn affidavit in support of the claim. *See id.* at 491. By contrast, a party makes a *prima facie* showing by offering "proof of a chilling effect," like affidavits that describe group harassment plus a group's reluctance to associate. *See id.* (collecting cases). After an objecting party meets its *prima facie* burden, the Courts engage in a balancing test using the following factors: "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 U.S. Dist. LEXIS 19475, at *14 (D. Kan. Mar. 16, 2007); *see also Grandbouche*, 825 F.2d at 1466.

Here, Xcentric has not even offered an unsworn affidavit in support of its many First Amendment privilege claims. Rather, in its privilege log it states, without explanation, that it has redacted the following documents "on First Amendment grounds": XCV Pistotnik002084-002101, 002156, 002174-002191, 002246, 002252-002269, 002315, and 002318 (IP addresses); 002406-002424 ("Name and contact information of person who wrote to the Legal Department"); 002647-002658, 002722-002739, 002794, 002818-002835, 002890, 002896-002913, 002973, 002983-002986, and 002992-002997 ("IP addresses of people who viewed Pistotnik reports"). These conclusory claims of First Amendment privilege do not even approach the *prima facie* showing required under Tenth Circuit precedent. *See In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d at 488. Xcentric should have to produce unredacted copies of these documents. Should the Court allow Xcentric to provide supplemental information

to meet its *prima facie* burden, Dorsett requests leave to show the court how, with respect to the different documents, the above factors weigh in his favor.

> **6. Xcentric Should be Ordered to Reveal the Sender Information for Emails for which the Body of the Email Was Produced.**

Xcentric withheld the "sender" information from approximately 50 emails, the body of which was produced. This was discussed at the last status conference. If Xcentric has produced the body of emails related to the claims being made in this prosecution, Dorsett is entitled to know who sent the email. This is important because several such emails contain additional exculpatory information. Without knowing who sent the email, Dorsett would be unable to call that person as a witness at trial. Dorsett requests only the person's name; the person's email address is unnecessary. These emails appear at pages XCV Pistotnik000062, 000064, 000374 (first name only, email is blacked out), 000434, 000625, 000644, 000688, 000736, 000769, 000770-000772, 000785, 000793, 000818, 000847, 0001243, 001244, 001254, 001442, 001630, 001646, 001652, 001665, 001672, 001679, 001686, 001693, 001702, 001709, 001723, 001730, 001741, 001748, 001755, 001771, 002004, 002060, 002061, 002062, 002333, 002335, 002339, 002411, 002412, 002665, 002951, 003006, 003007, 003008, 003009, 003011, 003015, and 003906. To the extent Xcentric claims this information is protected by the attorney-client privilege, it has waived that privilege (as discussed in 3, above).

> **7. Xcentric and Chandler Should be Ordered to Produce Information Related to Their Allegedly Damaged Equipment.**

Finally, Dorsett requests that Xcentric and Chandler be ordered to produce the items requested by Dorsett's computer expert, Tami Loehrs of Loehrs Forensics, that relate to what impact the emails could have had on their respective systems. For its part, Chandler has stated the information requested is available and would not pose a security risk because it is not using

that equipment. Carl Ingram, a representative of Chandler, has since provided some, but not all, of the requested information through a supplemental declaration. But Xcentric has provided no information about the computers that received the emails. This is important because different computers have different capacities for processing and storing information. For Ms. Loehrs to render her opinions in this case, she needs the requested information, and neither Xcentric nor Chandler have claimed Ms. Loehrs can render her opinions without this it. Xcentric and Chandler should have to produce this information so Ms. Loehrs can prepare her expert opinions for trial.

## **CONCLUSION**

This Court's discovery orders have forced Xcentric Ventures, LLC (Xcentric) and Chandler Automated Systems, LLC (Chandler)—the self-proclaimed victims in this case—to reveal material, exculpatory information that they had not shared with the government before this case was charged. The information disgorged from Chandler shows the damages it claims to have suffered were manufactured for the purposes of inducing a law-enforcement entity to pursue criminal charges.

Defendant David Dorsett asks that this Court order Xcentric and Chandler to continue following these discovery orders, along with relevant precedent and rules, and disclose the information requested in this motion. With Xcentric's true motivation known, Dorsett has no reason to believe he will obtain any of this information without this Court's involvement.

Dorsett respectfully prays that his motion be granted. Should this Court wish to review any of the documents referenced in this motion, Dorsett will provide them at this Court's direction in accordance with the Protective Order.

          s/ Edward L. Robinson
          Edward L. Robinson, #22043
          Robinson Law Firm, LLC
          200 N. Broadway, 5th Floor
          Wichita, KS 67202
          (316) 260-9771 Tel
          (316) 462-9530 Fax
          erobinson@robinsonlawks.com
          *Attorney for David Dorsett*

## CERTIFICATE OF SERVICE

On August 16, 2019, I uploaded this document with the Clerk of the District Court using the CM/ECF system, which will send a notice of filing to all counsel of record.

          /s/ Edward L. Robinson
          Edward L. Robinson