**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | Case No. 6:18-cr-10099-EFM |
| | ) | |
| BRADLEY A. PISTOTNIK, ET AL. | ) | |
| | ) | |
| *Defendants.* | ) | |

**XCENTRIC VENTURES, LLC's & CHANDLER AUTOMATED SYSTEMS, LLC'S**
**RESPONSE TO MOTION TO COMPEL (Dockt. #125)**

COMES NOW, Xcentric Ventures, LLC, ("Xcentric") and Chandler Automated Systems, LLC ("Chandler"), by and through counsel, and hereby submits their Joint Response to Defendant David Dorsett's Motion to Compel. In support of this Joint Response, Xcentric and Chandler, respond to three main issues raised in the Motion to Compel:

- Defendant Dorsett's attempt to compel the additional production of data represents a fundamental mischaracterization of the magnitude and damage inflicted upon Xcentric Ventures, LLC - the victim of the attack. Regardless, those assertions are an attempt to litigate factual issues, which are inappropriate for this stage of the proceeding and best saved for trial;

- Defendant Dorsett's Motion to Compel production highlights the expanding scope of requested information; converting the request for information under a Rule 17(c) subpoena to an ongoing discovery process, which if granted will cause needless expense and unnecessary delay of the trial;

- Compelling disclosure of the identity of various individual names and a determination regarding privilege assertions is outside the scope of the issue of damages sustained by Xcentric's email server and should be denied as irrelevant unless materiality can be demonstrated.

## BACKGROUND

1.     Xcentric Ventures, LLC is a limited liability company organized under the laws of the State of Arizona.  It is the owner and operator of a website known as www.ripoffreport.com (the "Ripoff Report"), dedicated to consumer protection and exposing fraudulent and improper conduct by businesses.

2.     Chandler Automated Systems, LLC is a limited liability company organized under the laws of the State of Arizona. Chandler is a vendor of Xcentric and provides IT and cyber-security support to assist with Xcentric's information technology systems, which includes the administration and maintenance of its email systems.

3.     Defendants Bradley Pistotnik and David Dorsett were indicted in the United States District Court for the District of Kansas for their alleged participation in a scheme to utilize an email bomb to overwhelm and damage the Xcentric email server associated with the website in an attempt to force the company to take down information that has been posted about Bradley Pistotnik; going as far as not only attacking Xcentric but also its' supporting advertisers and outside legal counsel.  As a result of that attack, the government has alleged that the email bomb violated various provisions of 18 U.S.C. § 1030 related to fraud in connection with computers and caused damages to Xcentric in excess of $5,000.

4.     On June 19, 2019, the defendants, the United States Attorney's Office, Xcentric, and Chandler appeared before this Court for a status conference.  Based on unresolved discovery issues, the Court ordered the parties to conduct a meet and confer no later than June 28, 2019. Additionally, Court further ordered that "any person necessary" who could competently address the adequacy of the subpoena response be present for the meeting, which included experts from both sides.  (Dockt. #99).

5.      The Court further ordered that if any person required to be at this meeting was unable to appear in person, the Court would allow that person—upon a written request showing good cause—to appear by video teleconference.  (Dockt. #99).

6.      This Court established a deadline for production of any requested items by July 5, 2019 and any additional objections to failure to produce documents for production by July 10, 2019.

7.      Following the status conference on June 19, 2019 the parties agreed to reconvene in Wichita, KS on June 26, 2019 at the United States Attorney's Office for the Meet and Confer:

- Xcentric Ventures, LLC was present at the Meet and Confer by and through undersigned counsel and in-house attorney Anette Beebe.

- Chandler Automated Systems was also present at the Meet and Confer by and through undersigned counsel and technology expert Carl Ingram.

- David Dorsett's counsel of record was present at the Meet and Confer.  Mr. Dorsett's forensic computer expert joined the Meet and Confer by phone.

- Attorneys for Bradley Pistotnik were present for the Meet and Confer.  It is unclear if there was a computer expert for Bradley Pistotnik present at the Meet and Confer.

- AUSA Jason Hart was present for the Meet and Confer on behalf of the United States Attorney's Office.

The Meet and Confer lasted a little over three hours and was more akin to a civil discovery deposition of both Chandler computer expert Carl Ingram and in-house counsel Anette Beebe. Among the topics discussed were the production of emails, logs, tickets for work performed, invoices, banking information for payments made, security concerns, the logistics of how the

attack was performed and why it caused system failure, remediation work, etc. Surprisingly, neither computer expert for Mr. Dorsett or Mr. Pistotnik asked a single question at the Meet and Confer or actively engaged in the technical explanations offered by both Chandler and Xcentric regarding the email attacks.

8.    At the conclusion of the Meet and Confer both Chandler and Xcentric agreed to work towards the expeditious production of the requested items to satisfy the requests for information and to supplement the previous production of less than 10 pages of material. The efforts by both Xcentric and Chandler over a series of weeks has resulted in the production of approximately 4,000 pages of additional materials, including but not limited to .pst files, various emails, leasing contracts, specific server-node errors, ticket notes, inter-office emails, an audio conversation with Mr. Pistotnik, and communications with law enforcement.

## DISCUSSION

### A.    Mr. Dorsett's Motion to Compel Imposes Requirements Beyond Those Contemplated by Rule 17(c).

Mr. Dorsett seeks the use of the Rule 17(c) subpoena as a tool for additional discovery in this case, which is prohibited. This is a road already traveled within the context of this litigation and should be denied as both inappropriate and moot.

Rule 17(c) states in pertinent part, that "[a] subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). Furthermore, "a subpoena requiring the production of . . . confidential information about a victim may be served on a third party only by court order." Fed. R. Crim. P. 17(c)(3). When requesting a subpoena, the Defendant must overcome three hurdles: relevancy, admissibility, and specificity. *United States v. Nixon*, 418 U.S. 683, 698-99 (1974); *United States v. Ary*, No. 05-10053-01-JTM, 2005 WL 2372743, at (3 (D. Kan. Sept. 27, 2005); *United*

*States v. King*, 164 F.R.D. 542, 545 (D. Kan. 1996).  Such a showing cannot be conjectural or potentially clear the three hurdles articulated by the Supreme Court; rather, "[t]here must be a 'sufficient likelihood' that the requested material is 'relevant to the offenses charged in that indictment,' and a 'sufficient preliminary showing that the requested material contains evidence admissible with respect to the offenses charged.'"  *King*, 164 F.R.D. at 545 (quoting *Nixon*, 418 U.S. at 700).  Likewise, "[t]he moving party must specify why the materials are wanted, what information is contained in the documents, and why those documents would be relevant and admissible at trial."  *Id.*, at 546.  "This requirement ensures that Rule 17(c) subpoenas are used only to secure specific documents or sharply defined groups of documents for the trial."  *Ary*, 2005 WL 2372743, at *3.  The standard also "prevents the defendant from using the subpoena as a 'fishing expedition to see what may turn up.'"  *Id.*

Courts in the 10th Circuit have allowed the issuance of third-party subpoenas pursuant to Rule 17(c) where the defendant demonstrated he would not be able to properly prepare for trial without inspection of the subpoenaed materials.  *United States v. Romine*, No. 04-cr-0231 JB, 2004 WL 7337688 (D.N.M. Jul. 28, 2004).  However, the Courts in the District of Kansas have also denied the issuance of a subpoena where the defendant failed to demonstrate the requested information was material in preparing the defense.  *United States v. Deleon*, No. 12-mj-90069-KGS, 2012 WL 4951981, at *3 (D. Kan. Oct. 17, 2012).

The Advisory Committee Notes for Rule 17(c) indicate that the "rule is substantially the same as Rule 45(b) of the Federal Rules of Civil Procedure."  However, Rule 17(c) is not "intended to provide a means of discovery for criminal cases . . . ."  *Ary*, 2005 WL 2372743, at *3; *King*, 164 F.R.D. at 545.  Significantly, the District of Kansas has stated that "[i]n a criminal case, **civil discovery is not permitted**."  *Ary*, 2005 WL 2372743, at *4 (holding that defendant

attempted to use a third-party subpoena as a discovery tool and consequently denied issuance of the subpoena).

Here, the defendant attempts to force Xcentric and Chandler to turn over additional materials for discovery, including privileged and confidential communications.  Having received thousands of pages in discovery, the tenor of Mr. Dorsett's request has now changed from a determination about damages to the email server to a demand that Xcentric demonstrate why communications redacted as privileged and confidential should be produced.  However, the motion is lacking of any specific discussion as to why the privileged information is relevant and admissible.  *See King*, 164 F.R.D. at 545.  Nor has the Defendant sufficiently articulated why he would not be able to properly prepare for trial without the privileged information, and he further fails to demonstrate the privileged and confidential communications are material to preparing the defense.  The motion to compel should fail.

Interestingly, defendant cites mostly civil discovery cases.  Clearly, the District of Kansas considers Rule 17(c) separate and distinct from the Federal Rules of Civil Procedure.  Because the District of Kansas does not permit civil discovery in criminal cases, defendant's arguments relating to privileged materials should also fail.

Finally, Defendant's argument cuts against the Court's previous statements in its Order on Xcentric's Motion to Quash.  For instance, the Court noted that Rule 17(c) has a limited scope: "Rule 17(c) is not a discovery tool."  *See* p. 6.  The Court also added that the Defendant's requests read like civil discovery and noted that such requests were objectionable in the criminal context, though they were likely not in a civil case.  *See* p. 19.  Accordingly, the Court has previously noted the distinctions between the scope of civil discovery and criminal discovery, and for the same reasons, Mr. Dorsett's motion to compel should fail.

### 1. Protecting Employee Identity and Privilege

Both defendants have been provided information responsive to the subpoena request at great cost and effort by both Xcentric and Chandler. The increased production of thousands of pages more in discovery represents Xcentric and Chandler's best efforts to be as broad as possible in its search for materials across their respective companies, while maintaining privilege where applicable, and protecting confidential information of vendors and employees.[1] As was discussed at the Meet and Confer, disclosure of employee names in previous cases has sometime subjected those individual employees to malicious cyber-attacks and harassment; similar in kind and worse to the alleged behavior in this case. There was no feedback at the Meet and Confer by an expert for either Mr. Dorsett or Mr. Pistotnik expressing a concern about that production format or redaction of names.

To the extent the Court determines that certain employees domain addresses or names of employees or vendors should be fully disclosed, Xcentric and Chandler respectfully suggest that the Court perform an *in camera* review of the communications identified by Mr. Dorsett to ensure that it meets the materiality requirements relevant to his defense. Similarly, the Court could order, at defense expense, the establishment of a third-party review team similar to those utilized by the United States Attorney's Office when privileged materials have been seized pursuant to a search warrant. That review team would examine the email or communication identified by Mr. Dorsett and allow the parties to argue for exclusion or production. This may lead to further discovery disputes down the road, but at least this option provides a balanced

---

[1] This Court has graciously granted numerous production continuance motions, which often highlighted Xcentric's concerns that they needed to look more fully at all possible sources for additional data that could be relevant to the defendant's request.

approach between Mr. Dorsett's demand for production and Xcentric's assertion of privilege and confidentiality.

### 2.    Protecting the Identify of Authors of Reports

Ripoff Report believes strongly in its mantra that it "protects consumers' First Amendment Right to free speech."  Xcentric does not release identity information about the anonymous authors of Ripoff Reports, because Xcentric protects the free speech rights of anonymous authors, and because revealing author information without due process would chill free speech on the Ripoff Report forum and in general, due to concerns about retaliation from the subject of the Ripoff Reports.

As discussed in previous pleadings filed in this discovery litigation, Xcentric follows the law set out in *Mobilisa Inc. v. Doe*, 170 P.3d 712 (Ariz. Ct App. 2017) with respect to releasing identity information about authors of Ripoff Reports.  In order to compel release of anonymous author information under Mobilisa, the requesting party must: (1) give the speaker adequate notice and reasonable opportunity to respond to the discovery request; (2) show that the requesting parties cause of action could survive motion for summary judgment on elements not dependent on the speaker's identity, and (3) show that a balance of completing interests favors disclosure. *Id.* ¶28.  Xcentric provides procedures for Plaintiffs in defamation cases (and others with legal standing) to give notice to anonymous authors by posting notice on the RipoffReport.com webpage in connection to the challenged report.  Without notice to the author, Xcentric believes it would be in violation of the law if authorship was disclosed.  Redaction of the information related to the author at this point is mandatory.

**B.      Mr. Dorsett's Explanation of the Email Attack in this Case Severely Understates the Power and Damage of the Email Bombs Used**

Mr. Dorsett's Motion to Compel urges the Court to view the emails in this case as "emails of the most common variety, just like countless emails many of us receive for work and personal business." (Dorsett Motion to Compel, p. 3). This explanation does not comport with reality. First, most business and personal emails do not contain threats to cause massive destruction of information if a person or business does not take action in conformity with the demands of the attacker.

Second, as Chandler computer expert Carl Ingram explained to Mr. Dorsett, Mr. Pistotnik, and the USAO, the email bomb's success was not dependent upon a sophisticated Trojan Horse code or a unique virus algorithm. Rather, the email bomb's sole purpose was to overwhelm the Xcentric email hosting server with the sheer volume of email sent. The goal was successfully achieved. The Techopedia website more accurately describes an email bomb as "a form of Internet abuse which is perpetrated through the sending of massive volumes of email to a specific email address with the goal of overflowing the mailbox and overwhelming the mail server hosting the address, making it into some form of denial of service attack."[2] The Department of Homeland Security further defines a denial of service attack as follows:

> "A denial-of-service (DoS) attack occurs when legitimate users are unable to access information systems, devices, or other network resources due to the actions of a malicious cyber threat actor. Services affected may include email, websites, online accounts (e.g., banking), or other services that rely on the affected computer or network. A denial-of-service is accomplished by flooding the targeted host or network with traffic until the target cannot respond or simply crashes, preventing access for legitimate users."[3]

---

[2] https://www.techopedia.com/definition/1655/email-bomb
[3] https://www.us-cert.gov/ncas/tips/ST04-015

The concept of the denial-of-service attack (DoS or DDoS[4]) can be difficult to understand in the abstract.  An illustration best explains how an attack of this type occurs:

## NORMAL FUNCTION FOR EMAIL SERVER



In the above scenario, Xcentric's email server is able to handle the occasional threat.  However, the threat alleged in this case was devastating because of the volume of emails that were sent to overwhelm the email system:

---

[4] A distributed denial-of-service (DDoS) attack occurs when multiple machines are operating together to attack one target. DDoS allows for exponentially more requests to be sent to the target, therefore increasing the attack power. It also increases the difficulty of attribution, as the true source of the attack is harder to identify.  (https://www.us-cert.gov/ncas/tips/ST04-015)

### ATTACK OF EMAIL SERVER



Mr. Ingram provided an exhaustive explanation of the problems the email bombs caused the Xcentric email server during the Meet and Confer and in his Supplemental Declaration, dated June 14, 2019.  Further explanation about the make, model number, role of the server at the company, and cost of those items were also provided in a Supplemental Declaration dated August 2, 2019. Discussions by Mr. Dorsett to obtain information about the "computers that received the emails" to assist his expert in rendering an expert opinion do not make sense in light of the information presented regarding the failure of the server at issue, not individual laptops or computers.  There has never been a claim by Xcentric that individual computers or laptops were damaged, which makes all items listed in #7 (Dorsett's Motion to Compel, p. 4) irrelevant to the damages issue in this case.

The United States Attorney's Office continues in its efforts to proceed with its prosecution of the case.  To the extent Mr. Dorsett believes there are disputed factual issues regarding the remediation work, the nature of the attack, etc., and the veracity of other documents now in his

possession, Xcentric and Chandler respectfully suggest those matters are better addressed in a trial forum, not litigated through a Motion to Compel.

## <u>CONCLUSION</u>

Xcentric Ventures, LLC and Chandler Automated Systems, LLC, the victims in this case, remain committed to helping law enforcement in the prosecution of this matter and bringing resolution to the process.  They have fully complied with this Court's orders on discovery and will continue to do so as the case moves forward.  For the reasons articulated above, Xcentric and Chandler request that Mr. Dorsett's Motion to Compel be denied and that the Court provide any other relief that is deemed warranted and just in light of the facts submitted to this Court for its consideration.

Respectfully submitted,

/s/ Shazzie Naseem
Shazzie Naseem            KS #24954
Berkowitz Oliver LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO  64108
Phone:  816-561-1888
Fax:  816-561-1888
snaseem@berkowitzoliver.com


/s/Angela L. Campbell
Angela L. Campbell AT# 0009086
Lead Counsel for Xcentric Ventures
DICKEY & CAMPBELL LAW FIRM, P.L.C.
301 E. Walnut St., Suite 1
Des Moines, Iowa 50309
PHONE: 515.288.5008
FAX: 515.288.5010
E-MAIL:  angela@dickeycampbell.com

**<u>CERTIFICATE OF SERVICE</u>**

On August 30, 2019, I electronically filed this document with the Clerk of the District

Court using the CM/ECF system, which will send a notice of filing to all counsel of record.

<u>**/s/ Shazzie Naseem**</u>
Attorney for Xcentric Ventures, LLC